COMSTOCK v. CONNELLY. See Case No. 3,081.

COMSTOCK (KNICKERBOCKER INS. CO. v.). See Case No. 7,879.

COMSTOCK (LOCKWOOD v.). See Case No. 8,449.

COMSTOCK (PHELPS v.). See Case No. 11,-075.

---

## Case No. 3,082.

COMSTOCK et al. v. SANDUSKY SEAT CO. et al.

[3 Ban. & A. 188;[1] 13 O. G. 230; 3 Cin. Law Bul. 73.]

Circuit Court, N. D. Ohio. Jan. 11, 1878.

PATENTS—CARRIAGE BODIES AND SEATS—VALIDITY — DATE OF INVENTION — PUBLIC USE — PRIMA FACIE VALIDITY—PLEADING AND PROOF.

1. The invention of a patented device may be fairly held to date back to the time when the inventor made models, and entered into a contract for its manufacture.

2. The mere making of an article, more than two years prior to the time of the application for a patent, is immaterial, and, where the evidence raises a doubt as to the fact of public use or sale for more than two years prior, such doubt should be resolved against the defendants, upon whom rests the burden of proof.

3. The patent is prima facie valid. It is a muniment of title. He who would overcome it must do so by a clear preponderance of evidence.

4. A defence that the invention involved simply the substitution of one material for another, and was, therefore, not patentable, not having been set up in the answer, the objection was overruled.

5. Reissued letters patent No. 4,780, granted to the complainants, assignees of S. B. Graham, for improvement in carriage bodies and seats, held valid.

[In equity. Bill by Theodore Comstock and others against the Sandusky Seat Company and others for alleged infringement of reissued letters patent No. 4,780, original patent numbered 95.466.]

Hatch & Parkinson, for complainants.
M. D. Leggett & Co., for defendants.

Before SWAYNE, Circuit Justice, and WELKER, District Judge.

WELKER, District Judge. This suit is brought upon reissued letters patent No. 4,-780, granted to the complainants, Theodore Comstock, Ezra Booth, and Henry F. Booth, as assignees, by mesne assignment, of Simon P. Graham, March 5th, 1872, for improvement in carriage bodies and seats.

The defences are, severally, (1) non-infringement, and (2) invalidity of the patent. The invalidity alleged being (1) anticipation,

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

(2) prior use, (3) abandonment, (4) public use for more than two years prior to application for complainants' patent, (5) that reissue was for a different invention from the original, and (6) the existence of a prior Canadian patent, etc.

We have carefully considered the evidence and arguments of counsel, and now state our conclusions:

1. It is not controverted that Graham's invention was perfected, and that he made two seats as described in his patent, prior to April, 1867.

2. He applied for his patent August 9th, 1869. The patent was issued October 5th, 1869, and was reissued March 5th, 1872, upon which reissue this suit is founded.

3. At the close of the argument we were satisfied that the patent of the complainants was valid unless successfully assailed (1) for want of novelty with respect to the invention, or (2) by reason of the sale and use of the thing patented more than two years prior or to the application for the patent, that is, more than two years before August 9th, 1869 —in other words, before August 9th, 1867. These points we have carefully considered in our further examination of the case.

4. As to the priority of invention, our attention was particularly called to the claim in behalf of Burt. Upon examination of the testimony bearing upon the subject, it seems to us clear that it is not shown that anything that was done by Burt was not done later than April, 1867. It is clear upon the proofs that Graham perfected his invention, made models, and took them with him to Wauseon, and there entered into a contract with Stebbins for the manufacture of the seats in November, 1866. His invention, according to the record, may be fairly held to date back to that time. But this is immaterial, as nothing is shown as to any other party, which antedates the time fixed by the admission of respondents' counsel, which is before April, 1867. The other cases of alleged prior invention are unsustained. It is unnecessary to remark further in regard to them.

5. As to the use and sale of the thing patented. (1.) The Stebbins contract. This contract was entered into by Graham & Stebbins in November, 1866. No seats were completed by them. Two were partly made when the contract was put an end to, and Stebbins retired. Graham alone completed these seats. The mere making them without anything more was immaterial; but (2) Graham sold one of them, after they were completed, to Ben Smith, with a buggy, of which it was a part. The date of this sale is important in the case. The testimony upon this point is very conflicting; upon the whole, it does not satisfy us that the sale was made before August 9th, 1867. We are brought to the conclusion that it was not. If the evidence, however, raised a doubt, which we think it does not, such doubt, it is

well settled, should be resolved against the respondents, upon whom rests the burden of proof. Coffin v. Ogden, 18 Wall. [85 U. S.] 120. This rule is founded in justice and good sense. The patent is prima facie valid. It is a muniment of title. He who would overcome it must do so by a clear preponderance of evidence.

6. We are in some doubt as to the point whether the invention is not in substance only the substitution of one material for another, iron for wood, and whether, hence, there is not a want of patentability. Hotchkiss v. Greenwood, 11 How. [52 U. S.] 248. This defence is not set up in the answer, as it should have been; but, possibly, the bill shows no equity on its face, and perhaps the facts are such that the court can take judicial notice of them. Brown v. Piper, 91 U. S. 37. But in view of the decision in Smith v. Goodyear, 93 U. S. 486, we are inclined to think we ought to overrule this objection, and leave the respondents to raise the question, if they think proper to do so, in the supreme court, by appeal.

7. The infringement complained of is made out by the evidence.

Upon the whole case, then, we think there should be a decree for the complainant, which we direct to be entered, and the usual reference to commissioner to report account and damages.

[Decree: This case having been brought on to be finally heard, on the pleadings and proofs at the April term of this court, 1877, before their honors Justice Swayne and Judge Welker, holding the said term of court, and the counsel for the respective parties having been fully heard thereon, and the case having been submitted on the oral arguments and full briefs by the counsel for the respective parties, and due deliberation having been thereon duly had, it is ordered, adjudged, and decreed, and this court, by virtue of the power therein vested, doth order, adjudge, and decree:

[First. That the reissued letters patent No. 4,780, issued to Theodore Comstock, Ezra Booth, and Henry F. Booth, of Columbus, Ohio, as assignees by mesne assignment, of Simon P. Graham, of London, Canada, and dated March 5, 1872, being a reissue of the letters patent No. 95,460, granted to Simon P. Graham, October 5, 1869, for improvement in carriage bodies and seats, are good and valid in law.

[Second. That the complainants are the sole and exclusive owners of all the rights granted or conferred by said reissued letters patent.

[Third. That the defendants have infringed and violated said reissued letters patent by manufacturing at Sandusky, Ohio, and selling in various parts in the United States, carriage-seats embodying the improvements described in said patent, and recited respectively in the third, fourth, fifth, sixth, sev-

enth, eighth, ninth, and tenth claims thereof.

[Fourth. That the said defendants do account to the said complainants for the damages sustained by the complainants, and for the profits made by the said defendants in consequence of such infringement.

[Fifth. That an account of the said damages and said profits be taken and stated by Earl Bill, Esq., who is hereby appointed special master commissioner for that purpose; and that the defendants, their attorneys, agents, servants, and employes appear before the said master from time to time, on notification from him and under his direction; and that the complainants may examine the said defendants, their officers, employes, agents, attorneys, and servants, under oath, as to the several matters pending on the said reference; and that the said defendants produce before the said master, on oath, all such deeds, contracts, specifications, papers, writings, and books as the said master shall direct, that are in their custody or under their control, or subject to their order, and that relate to said matters that shall be pending before the said master; and that the said master have all the authority and power conferred upon masters in like cases by the 77th rule prescribed by the supreme court of the United States as rules of practice of the courts of equity of the United States.

[Sixth. That a perpetual injunction issue out of and under the seal of this court against the said defendants and each of them, commanding them, their attorneys, agents, workmen, officers, servants, and employes to desist from making, using, or vending any carriage-seats containing or embodying any inventions described in said reissued letters patent, and recited in the third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth claims thereof, and from in any manner infringing upon or violating any rights or privileges granted or secured to the complainants by said reissued letters patent.

[Seventh. That the said complainants recover of the said defendants as well the damages as the profits which shall be reported by the said master herein, and that, upon the confirmation of his report, a decree shall be entered, against the defendants therefor, and also for the costs of the complainants in this suit in this court; and that the complainants have executed therefor and for the compensation of the said master, to be fixed on the coming in and confirmation of his report.

[Eighth. That the parties and master may apply on due notice to the court upon the foot of this decree for such other and further order, instructions, and directions as may be necessary.]

---

[From 13 O. G. 230.]

[From 13 O. G. 230.]